388 A.2d 730

**Henry ELLENBOGEN, President Judge, on behalf of the Judges of the Court of Common Pleas of Allegheny County, Fifth Judicial District, Appellant,**

v.

**COUNTY OF ALLEGHENY, James Flaherty, Thomas J. Foerster, Robert Peirce, as Allegheny County Commissioners, Pennsylvania Labor Relations Board, American Federation of State, County and Municipal Employes, AFL–CIO, Service Employees International Union, AFL–CIO, Allegheny County Associated Professional Employees and Robert P. Kane, Attorney General of the Commonwealth of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1977.

Decided July 14, 1978.

Scott F. Zimmerman, James J. Restivo, Jr., Pittsburgh, for appellant.

Alexander Jaffurs, Thomas H. Hough, Pittsburgh, for Allegheny County Com'rs.

Paul H. Titus, Pittsburgh, for Allegheny County Associated Professional Employees.

Louis B. Kushner, Pittsburgh, for Service Employees International.

Richard Kirschner, Philadelphia, for American Fed. of State, County & Municipal Employees.

James L. Crawford, Robert Kane, Atty. Gen., Harrisburg, for Pennsylvania Labor Relations Bd.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Petitioner judges of the Court of Common Pleas of Allegheny County seek a declaratory judgment[1] identifying the managerial representative for purposes of collective bargaining and representation proceedings under the Public Employe Relations Act (Act 195)[2] involving employees they supervise.[3] We conclude that respondents Allegheny County commissioners are the managerial representatives for purposes of these proceedings and remand to the Pennsylvania Labor Relations Board for proceedings consistent with this opinion.

I

On May 3, 1972, the American Federation of State, County, and Municipal Employes (AFSCME) filed a petition for representation with the Pennsylvania Labor Relations Board (Board) alleging that AFSCME represented at least thirty per cent of "court" or "court-related" employees of Alleghe-

1. On March 21, 1977, we granted petitioners' application for assumption of extraordinary jurisdiction pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 205, 17 P.S. § 211.205 (Supp.1977). Respondents renew their assertion that this Court should dismiss the case because petitioners have disguised an untimely petition for allowance of appeal as a timely request for declaratory relief. In view of the continuing nature of this controversy of immediate public importance over which we have assumed plenary jurisdiction to avoid confusion in subsequent proceedings, we decline to dismiss the petition.

2. Act of July 23, 1970, P.L. 563, §§ 101 et seq., 43 P.S. §§ 1101.101 et seq. (Supp.1977) (Act 195).

3. "Employees supervised" by Allegheny County judges refers to "directly employed" persons, the designation of the Pennsylvania Labor Relations Board (Board) identifying public employees involved in this and related cases. See *Sweet v. Pennsylvania Labor Relations Board*, 479 Pa. 449, 388 A.2d 740 (1978) (Sweet II); *Bucks County Board of Judges v. Bucks County Commissioners*, 479 Pa. 455, 388 A.2d 743 (1978). Here, "employees supervised" includes employees in any division or part of the Court of Common Pleas of Allegheny County, including employees of the Allegheny County Bail Agency, Juvenile and Adult Probation Offices, Behavior Clinic, Minor Judiciary, and Law Library.

ny County.[4]   The Service Employees International Union
(SEIU) requested leave to intervene in the proceedings and
the Board granted the request.   The Juvenile and Adult
Probation Officers of Allegheny County (JAPOAC) also filed
a petition for representation and sought to represent proba-
tion officers of Allegheny County.   Each petition identified
the County or its commissioners as the public employer.

The Board held a hearing at which the County, AFSCME,
SEIU, and JAPOAC stipulated the "appropriateness" of the
bargaining unit and those departments of the County whose
employees were involved with and necessary to the function-
ing of the Courts and conducted a representation election.[5]
On December 15, 1972, the Board issued an order certifying
JAPOAC as the exclusive bargaining representative of pro-
fessional employees within the unit.   Following hearings
challenging the validity of certain ballots, the Board deter-
mined that non-professional employees within the unit se-
lected AFSCME as their bargaining representative.

On April 9, 1974, petitioners requested the Board to re-
open the proceedings and take further testimony on the
identity of the proper public employer.[6]   On July 16, 1974,
we decided *Sweet v. Pennsylvania Labor Relations Board*,
457 Pa. 456, 322 A.2d 362 (1974) (*Sweet I*), in which the
Board determined that judges of the Court of Common Pleas
of Washington County were not a public employer of em-
ployees comprising a bargaining unit of Washington County
court employees.   We held that judges "are at least *an*
employer of *some* of the employes included in the bargaining
unit composed of court-related employees."   Id. 457 Pa. at
462, 322 A.2d at 365 (emphasis in original).[7]   Petitioners then

4.  See Act 195, § 603(c), 43 P.S. § 1101.603(c).

5.  See id., § 604, 43 P.S. § 1101.604.

6.  Petitioners do not challenge the applicability of Act 195 to the
employees in this case, or the constitutionality of that application.
*See Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440,
388 A.2d 736 (1978) (upholding constitutionality of Act 195 as ap-
plied to court reporters of Philadelphia).

7.  See *Sweet II*, supra.

filed a petition requesting the Board to clarify its order and to dismiss the unions' petitions for representation, contending that under *Sweet I* petitioners, and not respondents, are the public employer of employees of the court.

Following a hearing, the Board vacated its December 15th order of certification and, concluding that Allegheny County judges are the public employer of all employees supervised by the judges, dismissed the unions' petitions for representation for want of a properly identified public employer. The county appealed to the court of common pleas, the judges and the unions petitioned this Court to assume plenary jurisdiction, and the county then requested that we transfer jurisdiction over its appeal to the Commonwealth Court. We assumed plenary jurisdiction and transferred the proceedings as requested.

## II

The Commonwealth Court reversed the Board's determination that Allegheny County judges are the public employer of the employees involved in this petition, concluding that our decision in *Costigan v. Local 696, AFSCME*, 462 Pa. 425, 341 A.2d 456 (1975), compelled the conclusion that the judges and county commissioners are joint "public employers" for purposes of representation proceedings and bargaining under the Act.

In *Costigan*, the Register of Wills of Philadelphia sought to enjoin arbitration pursuant to a collective bargaining agreement entered into by his predecessor and the representative of employees of the Register of Wills, contending that the agreement was invalid because the City of Philadelphia was not a party. Looking to "the purposes and policies of [Act 195]," id. 462 Pa. at 432, 341 A.2d at 460, and relevant cases under the National Labor Relations Act, this Court found that neither the City nor the Register of Wills had exclusive control over employees of the Register of Wills. While the Register of Wills had the authority to hire, discharge, and direct the work of employees of the Register of Wills, we determined that the City "pays most of the

employee salaries and other compensation costs of the office and exercises considerable control over the fringe benefits accorded the employees, which include enrollment under the City's group life and health insurance plans and coverage by the City's pension plan." Id. 462 Pa. at 434–35, 341 A.2d at 461. Because the City exercised control over remuneration and other economic benefits and was not a party to the collective bargaining agreement under which arbitration was sought, we held the agreement unenforceable.

Petitioners contend that respondents' power over salaries and other benefits is unlike the power of the City of Philadelphia in *Costigan* because judges, unlike the Register of Wills of Philadelphia, have inherent authority to compel payment of funds reasonably necessary to administer the courts, including proper salaries for the employees in question, thus negating the county's authority over economic benefits.[8] Petitioners accordingly contend that, by virtue of *Sweet I*, they are the exclusive managerial representative for purposes of representation proceedings and collective bargaining under Act 195.

Petitioners correctly state the principle that courts have inherent authority to compel payment of funds reasonably necessary to administer the courts. *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971); *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949).[9] They misperceive, however, the role of *Costigan* and *Sweet I* in determining the proper managerial representative in proceedings under Act 195. *Costigan* and *Sweet I* merely reflected the then existing view of the Legislature concerning the appropriate

8. See The Second Class County Code, Act of July 28, 1953, P.L. 723, §§ 1820 and 1823, 16 P.S. §§ 4820 and 4823 (1956).

9. Accord, *O'Coin's, Inc. v. Treasurer of County of Worcester*, 362 Mass. 507, 287 N.E.2d 608 (1972); *Judges For Third Judicial District v. County of Wayne*, 386 Mich. 1, 190 N.W.2d 228 (1971). See Annotation, "Inherent Power of Court to Compel Appropriation or Expenditure of Funds For Judicial Purposes," 59 A.L.R.3d 569 (1974); Carrigan, Inherent Power of the Courts (National College of the State Judiciary, 1973).

parties to protect managerial interests when management deals with court employees.

Recently, the Legislature amended The County Code [10] to place in commissioners of counties of the third through eighth classes exclusive authority to represent all managerial interests in representation proceedings and at the bargaining table when employees exercising their rights under Act 195, § 401, 43 P.S. § 1101.401, are paid from the county treasury. Section 1620 of The County Code, 16 P.S. § 1620, now provides:

*"Salaries and Compensation*

The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: *Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers."*

(1976 amendment emphasized). Thus, were this a case involving employees paid from the treasury of a county of the third through eighth classes, we would be required by statute to conclude that commissioners of Allegheny County are the managerial representative in proceedings under Act 195. *Sweet v. Pennsylvania Labor Relations Board,* 479 Pa. 449, 388 A.2d 740 (1978) (*Sweet II*); *Bucks County Board of*

10. Act of June 29, 1976, P.L. 460, § 1, amended Act of August 9, 1955, P.L. 323, § 1620, 16 P.S. § 1620 (1956 and Supp.1977).

*Judges v. Bucks County Commissioners,* 479 Pa. 455, 388 A.2d 743 (1978).[11]

We think that the legislative judgment expressed in this amendment to The County Code should apply to all judicial districts. The amendment governing representation of managerial interests promotes several important public interests, including fiscal responsibility. County commissioners are charged with the responsibility of raising revenue and allocating funds among various county services. See The County Code, §§ 1701–1705, 16 P.S. §§ 1701–1705 (1956 and Supp.1977).[12] Thus, the amendment allows county commissioners to make managerial decisions affecting tax dollars. This reflects the legislative judgment that the officials charged with providing revenue for budgets are best able to assess whether employee proposals at the bargaining table are feasible and consistent with the overall administration of county fiscal and governmental affairs.

The Legislature's designation of county commissioners as managerial representative also avoids the potential difficulties of having too many decision-makers, none with full authority to reach an agreement, on the public side of the bargaining table. The amendment thus ensures that the managerial representative will have full authority to reach early agreement. Such a setting, legislatively designed to promote swift and efficient bargaining proceedings, is not

11. Until the 1976 amendment to the County Code, see supra note 8, the Legislature gave no express indication that a particular entity could be a "public employer" for purposes of determining the scope of Act 195, see Act 195, §§ 301(1), 301(2), and 401, 43 P.S. §§ 1101.301(1), 1101.301(2), and 1101.401, but not necessarily for purposes of bargaining and representation proceedings. See e. g., id., §§ 602, 701, and 702, 43 P.S. §§ 1101.602, 1101.701, and 1101.702. Indeed, Section 601 of Act 195, 43 P.S. § 1101.601, providing that "[p]ublic employers may select representatives to act in their interest in any collective bargaining with representatives of public employes," demonstrates the Legislature assumed all managerial interests would participate directly in bargaining unless management expressly chose otherwise. Thus, *Sweet I* and *Costigan* proceeded on the assumption that the Legislature viewed those exercising some control over employment of employees as entitled to participate in bargaining and representation proceedings.

12. See supra note 10.

only attractive to parties at the bargaining table, but also advances the public interest in settlement of labor disputes.

"The judicial duties of a judge take precedence over all his other activities." Code of Judicial Conduct, Canon 3 (Adopted November, 1973). The Legislature's amendment to The County Code recognizes that judges are too scarce and too essential to the administration of justice to require them to perform the non-adjudicatory function of managerial representative at the bargaining table. The Legislature, aware of the long line of cases subjecting judges performing such a non-judicial function to civil suit, see e. g., *Ex Parte Rowland*, 104 U.S. 604, 26 L.Ed. 861 (1881) (probate judge also a member of a "court of county commissioners" acting in administrative and not judicial capacity and therefore subject to suit), has thus decided that judges should devote full attention to their judicial responsibilities, rather than to the non-judicial activities of bargaining and defending suits. Further, the amendment avoids difficult questions of the propriety of judges deciding appeals arising from proceedings in which they sat before the Board and at the bargaining table.

Most important, the amendment makes clear that by appointing county officials to sit on behalf of judges it in no way detracts from the authority of judges to "hir[e], discharg[e], and supervis[e]" employees comprising the bargaining unit. Thus, the Legislature has advanced the orderly administration of Act 195, see § 101, 43 P.S. § 1101.101, without allowing another branch of government to interfere with judicial authority over court personnel, an essential element of the judicial function.

Relations between judges and court personnel in all judicial districts of our unified judicial system are the same. The mere fact that the Legislature had occasion to amend only The County Code does not demonstrate that it intended to deny judicial districts in other counties the benefits of its desirable principle. The Legislature's amendment to The County Code promotes policies which apply to each of these districts and we perceive no reason why the sound legislative judgment expressed in the 1976 amendment should not be

adopted by this Court and made applicable to courts throughout the Commonwealth. Cf. *Javins v. First National Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071 (1970) (applying principles of Uniform Commercial Code governing implied warranties of sale to residential leases not governed by the Code); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969) (same); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965) (violation of Liquor Code provision making unlawful the distribution of liquor to person visibly intoxicated applied to independent civil action); see generally, Traynor, "Statutes Revolving in Common Law Orbits," 17 Cath.U.L.Rev. 401 (1968); W. Schaefer, "Precedent and Policy," 34 U.Chi.L.Rev. 3 (1966); Stone, "The Common Law in the United States," 50 Harv.L.Rev. 11 (1936); Landis, "Statutes and the Sources of Law," Harvard Legal Essays 213 (1934), reprinted in 2 Harv.J.Legis. 7 (1965); Pound, "Common Law and Legislation," 21 Harv.L.Rev. 383 (1908).

We therefore hold that Allegheny County Commissioners are the exclusive representative of management in representation proceedings and collective bargaining under Act 195 involving court employees paid from county funds. This exclusive authority, however, does not diminish the right of judges to "hire, discharge, and supervise" these employees.

Petitioners argue that this result hinders their ability to administer their courts. To the contrary, most of those matters properly within the scope of mandatory bargaining, see Act 195, §§ 701 and 702, 43 P.S. §§ 1101.701 and 1101.702; *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975), concern wages and other financial terms of employment, which do not affect judges' authority over the essential areas of hiring, discharging, and supervising of court personnel, and do not hinder the ability of courts to administer justice. Further, if results of bargaining pose a genuine threat to the judicial function, nothing in Act 195 or our decision precludes the judiciary from taking steps reasonably necessary to assure the independence of the judicial branch. See *Commonwealth ex rel. Carroll v. Tate*, supra (judiciary

can compel payment of sufficient funds to operate courts); *Leahey v. Farrell*, supra (same).

In sum, we conclude that the objections and potential risks envisioned by Allegheny County judges are largely hypothetical and are far outweighed by the many important advantages and jurisprudential benefits flowing from having county commissioners, and not judges, perform the nonadjudicatory role of managerial representative in proceedings under Act 195.

Order of the Commonwealth Court vacated and case remanded to the Pennsylvania Labor Relations Board for proceedings consistent with this opinion.

PACKEL, J., did not participate in the decision of this case.

MANDERINO, J., joins and files a concurring opinion.

NIX, J., concurs in the result.

MANDERINO, Justice, concurring.

I join in the opinion of Mr. Justice Roberts because currently more than half of the monies necessary to operate the courts come from local taxation—not state taxation. If and when the situation changes the proper managerial representatives might also change.

I agree that court employees have the right to collective bargaining under Act 195, and that judges should not be the managerial representatives who engage in collective bargaining with court employees. I also agree that *at the present time* the proper representatives are the county commissioners, who are now primarily responsible for raising and allocating funds for the local courts. This may not, however, remain the case.

The legislature, consistent with the implementation of a unified court system mandated by Section 1, Article V of the Pennsylvania Constitution, has started a reimbursement program whereby the state repays a portion of the judicial expenses paid by the counties. The legislature has currently allocated $24 million dollars to the State Court Administrator, who is responsible for administering the reimbursement

440

program and allocating monies to the counties for their court costs.  Eventually, almost all, if not all court costs and salaries on the county level may be paid by the state as a part of the administration of a unified court system.  At present, the state reimburses the counties for approximately thirty-seven percent of their judicial expenses.  When the point is reached where the state pays more than fifty percent of court expenses, the county may no longer be the public employer of court employees as defined in this opinion by the Court.  At that time, the proper bargaining agent may well be the State Court Administrator, regardless of any legislation to the contrary since if the interest of the counties significantly diminishes, new constitutional issues, not now before us, may affect the authority of county commissioners to act as bargaining representatives for the courts.  A statewide bargaining representative may be a desirable goal necessary to implement the mandate of Article 5, Section 1, of the Pennsylvania Constitution for a unified state judicial system.