Lycoming County Prison Board *v*. Commonwealth of Pennsylvania, Department of Labor and Industry et al. Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Appellant.

Lycoming County Prison Board *v*. Commonwealth of Pennsylvania, Department of Labor and Industry et al. District Council 86, American Federation of State, County and Municipal Employees, AFL-CIO, Appellant.

308

Argued March 6, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, CRAIG and MACPHAIL. Judges BLATT and DiSALLE did not participate.

*Jonathan K. Walters*, with him *Richard Kirschner*, and *Markowitz & Kirschner*, for District Council 86, American Federation of State, County and Municipal Employees, AFL-CIO.

*Donald A. Wallace*, with him *James L. Crawford*, for Pennsylvania Labor Relations Board.

*Charles J. McKelvey*, with him *William R. Tait, Jr.*, and *McNerney, Page, Vanderlin & Hall*, for Lycoming County Prison Board.

OPINION BY PRESIDENT JUDGE BOWMAN, August 31, 1979:

These appeals are brought by the Pennsylvania Labor Relations Board (PLRB) and District Council 86, American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) from an order of the Court of Common Pleas of Lycoming County reversing in part and affirming in part an order of the PLRB that the Prison Board of Lycoming County (Prison Board) had violated Sections 1201(a)(1) and 1201(a)(5) of the Public Employe Relations Act (Act 195),[1] 43 P.S. §§1101.1201(a)(1), .1201(a)(5).

The history of this case dates back to June of 1975 when the PLRB certified AFSCME as the exclusive bargaining agent for all full and regular part-time

---

[1] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §1101.101 et seq.

prison guards and matrons employed by the Prison Board, which is identified as the public employer in the certification. The Board is composed of the Lycoming County Commissioners, Sheriff, Judges, Controller and District Attorney. *See* Section 1 of the Act of May 16, 1921, P.L. 579, *as amended*, 61 P.S. §408.[2]

Subsequent to certification, bargaining between the Prison Board and AFSCME began. An impasse was reached, the provisions of Sections 805 and 806 of Act 195, 43 P.S. §§1101.805, .806, were implemented, and the matter was submitted to binding arbitration.

Prior to resolution by arbitration, however, the General Assembly promulgated the Act of June 29, 1976, P.L. 460 (Act 115), which amended Section 1620 of the County Code, Act of August 9, 1955, P.L. 323, 16 P.S. §1620 in the following manner:

> The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid

---

[2] That the persons now holding the following offices, and their successors, in all counties of this Commonwealth of the third, fourth, and fifth classes, shall compose a board, to be known by the name and style of inspectors of the jail or county prisons, to wit: The judges of the court of common pleas, the district attorney, the sheriff, the controller, and the commissioners of each of said counties; in which the board, and the officers appointed by it, the safekeeping, discipline, and employment of prisoners, and the government and management of said institution, shall be exclusively vested; and that the present responsibility of the sheriff of each of said counties in regard to the safe-keeping of the prisoners shall cease and determine on their committal to said prison, and such sheriff shall no longer be furnished a residence in said institution.

Any county of the sixth class may elect by resolution of the county commissioners to be governed by the provisions of this act.

from the county treasury shall be fixed by the salary board created by this Act for such purposes: *Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the Board of County Commissioners shall have the sole power and responsibility to represent judges of the Court of Common Pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.* (Amendment emphasized.)

As a result of these amendments the Prison Board moved to dissolve the arbitration panel on the grounds that it, though certified, was no longer the public employer of the bargaining unit, and that since no negotiation with the proper public employer, to wit: the County Commissioners, had taken place, Act 195's arbitration requirements could not yet be invoked.

AFSCME countered by filing an unfair labor practices charge premised upon the Prison Board's failure to submit to binding arbitration. After hearing, the PLRB rejected the Prison Board's claim that Act 115 altered its public employer status so as to obviate the need for the Prison Board to submit to binding arbitration, let alone negotiate with AFSCME, and in its final order of April 7, 1977 found the Prison Board to be a public employer within the meaning of Act 195 and in violation of Section 1201(a)(1) and (5).

The Prison Board appealed this determination to the Court of Common Pleas of Lycoming County

which affirmed the ruling of the PLRB to the extent that it included the Prison Board in the collective bargaining process, but held, in addition, that the County Commissioners, as an entity separate from the Prison Board, are joint public employers of the prison employees and that they too must be part of collective bargaining. No ruling was made with regard to the unfair labor practice charge brought against the Prison Board. Hence these appeals.

The PLRB and AFSCME argue that the PLRB properly designated the Prison Board as the public employer charged with the obligation to bargain with the prison employees by virtue of the exclusive power vested in the Board to govern and manage the prison as well as hire, fire and direct prison employees. Act 115, they allege, must be read in light of the statutory inclusion of the County Commissioners on the Prison Board. Accordingly, continues the argument, the passage of Act 115 did not alter existing employer-employee relationships for purposes of collective bargaining, at least insofar as the county commissioner-prison employee relationship was concerned, and so, for purposes of both Act 115 and Act 195, the Prison Board remains under obligation to negotiate.

There is a certain seductiveness to this line of reasoning. There is no dispute that the Prison Board has the power to hire, discharge, and direct the work of prison employees, thereby establishing at the very least an employer-employee relationship. *Sweet v. Pennsylvania Labor Relations Board*, 457 Pa. 456, 322 A.2d 362 (1974) (*Sweet I*). Nor is there any dispute that the Prison Board falls within Act 195's definition of a ''public employer'' as being an ''officer, board, commission, agency, authority or other instrumentality'' of a political subdivision of the Commonwealth of Pennsylvania. Act 195, Section 301(1), 43 P.S. §1101.301(1).

By virtue of Sections 1620 and 1622 of the County Code, 16 P.S. §§1620, 1622, the County Commissioners fix the salaries and compensation of all appointed officers and employees who are paid from the county treasury, including prison employees, and would thereby seem to qualify, at least in part, as an "employer".

It would appear, therefore, that we have a "joint employer" situation similar to that in *Costigan v. Philadelphia Finance Department Employees Local 696*, 462 Pa. 425, 341 A.2d 456 (1975), wherein the Supreme Court deemed both the Register of Wills and the City of Philadelphia to be joint employers under circumstances correlative to the instant case, and enjoined arbitration because the city had not been a party to the purported collective bargaining agreement. *See also, County of Washington v. Pennsylvania Labor Relations Board*, 26 Pa. Commonwealth Ct. 315, 364 A.2d 519 (1976) (commissioners and judges "joint employers" of certain court-related employees). Appellants argue that the requirements of *Costigan* are met in practical effect by the inclusion of the County Commissioners on the Prison Board.

This argument fails to take into account, however, the effect of Act 115 on Act 195. As we understand appellants' argument, they interpret Act 115 to be no more than a legislative directive that county commissioners be included in the bargaining process, all other pre-existing employer-employee relationships are retained. In situations where, as with the Prison Board, the bargaining rights of the Commissioners are already assured then, argue appellants, Act 115 is mere surplusage, merely an addition to the salary sections of the County Code, not a direction to the PLRB that it limit public employer certifications to the County Commissioners.

In evaluating the merit of these contentions we are constrained to interpret Act 115 in light of the recent

series of Supreme Court opinions which have sought to define a working relationship between Act 115 and Act 195. *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board,* 479 Pa. 440, 446, 388 A. 2d 736, 739 (1978) could not be more clear on the point that Act 115, though amending the County Code, must also be read into Act 195, a not untoward result in light of that tenet of statutory construction which would have us read statutes in pari materia as one statute. *See,* Statutory Construction Act of 1972, 1 Pa. C.S. §1932. *Bradley, supra, Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978), and *Sweet v. Pennsylvania Labor Relations Board,* 479 Pa. 449, 388 A.2d 740 (1978),[3] all stand for the initial proposition that Act 115 authorizes county commissioners to act as the managerial representative in proceedings under Act 195, *regardless* of the supervisory authority of another body.

How does this proposition affect: first, the "joint employer" concept espoused by the Supreme Court in *Costigan, supra,* advanced by us in *County of Washington v. PLRB, supra,* and embraced by the Lycoming County Common Pleas Court in the instant proceeding; and, second, the appellants' position that the managerial role of the County Commissioners codified by Act 115 was pre-existent in the statutorily prescribed complement of the Prison Board?

In answer to the first question, no other conclusion is possible other than that the rule of *Costigan, Sweet I,* and their progeny has been laid to rest by the *Ellenbogen* line of cases. The concept of a joint public employer arose out of what the Supreme Court origi-

---

[3] Decided the same day, on the same grounds, were: *Board of Judges, Court of Common Pleas of Bucks County v. Bucks County Commissioners,* 479 Pa. 455, 388 A.2d 743 (1978) ; and *Board of Judges, Court of Common Pleas of Bucks County v. Bucks County Commissioners,* 479 Pa. 457, 388 A.2d 744 (1978).

nally perceived to be the legislative intent that a "public employer," undefined by Act 195, be defined by traditional common law "indicia of employment." When two or more bodies shared these indicia, then they were deemed "joint employers."

*Ellenbogen*, however, *supra* at 434-35, 388 A.2d at 733, drastically altered this perception of public employment:

> Costigan and Sweet I merely reflected the then existing view of the Legislature concerning the appropriate parties to protect managerial interests when management deals with court employees.
>
> Recently, the Legislature amended The County Code to place in commissioners of counties of the third through eighth classes *exclusive authority* to represent all managerial in-interests in representation proceedings and *at the bargaining table* when employees exercising their rights under Act 195 . . . are paid from the county treasury. . . .
>
> . . . .
>
> . . . *[W]ere this a case involving employees paid from the treasury of a county of the third through eighth classes, we would be required by statute to conclude that commissioners of Allegheny County are the managerial representative in proceedings under Act 195.* (Quotations and citations omitted, emphasis added.)

We are here dealing with just the sort of situation described above, and must conclude that the County Commissioners are the exclusive bargaining agent for prison employees, regardless of the otherwise existent employer-employee relationship between the Prison Board and prison guards and matrons. *See, Commonwealth ex rel. Bradley v. PLRB, supra* at 446 n.5,

388 A.2d at 738 n.5; *Sweet v. PLRB, supra* at 453, 388 A.2d at 742-43.

This analysis is also dispositive of appellants' contention that Act 115 does nothing to change the pre-existing employer-employee relationship between Prisson Board and guards and matrons because the County Commissioners already sit on the Board. As *Bradley, supra* at 445-46, 388 A.2d at 738-39, makes clear, a particular employment relationship is irrelevant in the face of the mandate that county commissioners be managerial representative in collective bargaining negotiations involving employees paid from the county treasury.

Appellants buttress their argument on this point by what they believe to be the policy of Act 195 that all employer-employee units be available to bargain for a viable collective bargaining agreement. Act 195, Section 101, 43 P.S. §1101.101. Reading Act 115 in the light of this policy, they contend that when the Prison Board goes to the bargaining table the requirements of Act 115 are satisfied *ipso facto*.

Once again, we do not dispute the initial premise of appellants' argument, but believe the case to be the inverse of their conclusion. As a simple matter of statutory construction, the particular mandate of Act 115 must control any concept of a general policy behind Act 195. Statutory Construction Act of 1972, 1 Pa. C.S. §1933. In addition, *Ellenbogen, supra,* at 436, 388 A.2d at 734, is clear on what the Supreme Court perceives the policy of Act 115 to be, and its relation to collective bargaining:

> [Act 115] allows county commissioners to make managerial decisions affecting tax dollars. This reflects the legislative judgment that the officials charged with providing revenue for budgets are best able to assess whether employee proposals at the bargaining table are feasible

and consistent with the overall administration of county fiscal and governmental affairs.

The legislature's designation of county commissioners as managerial representative also avoids the potential difficulties of having too many decision-makers, none with full authority to reach an agreement, on the public side of the bargaining table. The amendment thus ensures that the managerial representative will have full authority to reach early agreement. *Such a setting legislatively designed to promote swift and efficient bargaining proceedings, is not only attractive to parties at the bargaining table, but also advances the public interest in settlement of labor disputes.* (Emphasis added.)

Whatever concern appellants have for representing Prison Board interests at bargaining must bow to this expressed view of legislative intent, and any arguable adverse impact is mollified by the fact that the County Commissioners will necessarily approach the bargaining table with attributes of Prison Board membership.

We, therefore, hold that the PLRB was in error in concluding that the Prison Board is the proper sole public employer and is, therefore, in violation of Act 195's unfair labor practices provisions. We hold also that the lower court erred in designating the Prison Board and County Commissioners joint employers.

ORDER

Now, August 31, 1979, the order of the Court of Common Pleas of Lycoming County is affirmed in part and reversed in part. The final order of the Pennsylvania Labor Relations Board of April 7, 1977 is set aside and these proceedings are herby remanded to the Board for proceedings consistent with this opinion.