318

Franklin County Prison Board, Appellant *v.*
Commonwealth of Pennsylvania, Pennsylvania
Labor Relations Board, Appellee.

Argued March 6, 1979, before President Judge
BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR.,
MENCER, ROGERS and MACPHAIL. Judges BLATT, CRAIG
and DISALLE did not participate.

*Jay R. Braderman,* with him *Baskin, Boreman, Wilner, Sachs, Gondelman & Craig,* for appellant.

*Donald A. Wallace,* with him *James L. Crawford,* for appellee.

*Richard Kirschner, Jonathan K. Walters,* and *Markowitz and Kirschner,* for intervenor.

OPINION BY PRESIDENT JUDGE BOWMAN, August 31, 1979:

Appellant, Franklin County Prison Board (Prison Board) has appealed an order of the Court of Common Pleas of Franklin County which dismissed appellant's petition for review of a final order of the Pennsylvania Labor Relations Board (PLRB) and ordered enforcement of said PLRB order. For the reasons stated below, we shall reverse.

The Prison Board, certified to be a "public employer"[1] within the meaning of Section 301(1) of the Public Employe Relations Act (Act 195),[2] 43 P.S. §1101.301(1), and District Council 89, American Federation of State, County and Municipal Employees (AFSCME), the certified bargaining representative of Franklin County prison guards, had reached an im-

---

[1] Although not raised by any of the parties in this case, it would appear to us, based upon the reasoning of *Lycoming County Prison Board v. Department of Labor and Industry,* 45 Pa. Commonwealth Ct. 307, A.2d (1979), also decided today, that the Prison Board is not the proper public employer of the county prison guards; rather, the Franklin County Board of Commissioners is.

[2] Act of July 23, 1970, P.L. 563, *as amended.*

passe in collective bargaining. Therefore, pursuant to Section 805 of Act 195, 43 P.S. §1101.805, the impasse was submitted to a panel of arbitrators. The arbitrators issued their award on March 31, 1976. The arbitrators' award was submitted to the Franklin County Salary Board, which, at a duly convened meeting on April 9, 1976, unanimously rejected the award.

On April 26, 1976, the Prison Board having refused to implement said award, AFSCME filed a charge of unfair labor practices with the PLRB. After hearing, the PLRB issued a nisi decision and order, concluding that the Prison Board, in refusing to implement the arbitration award, had committed an unfair labor practice in violation of Section 1201(a)(1) of Act 195, 43 P.S. §1101.1201(a)(1), and ordering the Prison Board to implement the award. Timely exceptions were filed by the Prison Board, which exceptions were dismissed by final order issued by the PLRB on June 16, 1977. From this final order, the Prison Board filed a petition for review with the Court of Common Pleas of Franklin County. That court ordered, on April 5, 1978, that the PLRB's final order "be enforced in its entirety."

The Prison Board argues that it cannot be ordered to enforce the arbitrators' award because it has no authority to implement the award. The Prison Board argues that an arbitrators' award establishing salaries must be approved by the action of either the Franklin County Salary Board or the Franklin County Commissioners, which action would constitute a "legislative enactment" within the meaning of Section 805 of Act 195, thereby rendering the arbitrators' award "advisory only" as to the Prison Board.

Section 805 of Act 195 provides as follows:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons . . . have reached an impasse in collec-

tive bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties *with the proviso that the decisons of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.* (Emphasis added.)

The phrase "legislative enactment," around which this case turns, is not further defined in Act 195.

Examination of the provisions of the Act of May 16, 1921 (Act of 1921), P.L. 579, *as amended*, 61 P.S. §408 et seq., relating to certain county prisons, and of The County Code,[3] 16 P.S. §101 et seq., clearly reveals that the legislature has vested the power and authority to fix compensation for county prison employees in the county salary board.[4] Section 2 of the Act of 1921, as recently amended by Section 1 of the Act of October 7, 1976, P.L. 1106, 61 P.S. §409, provides that a county prison board "shall appoint a warden of the prison" who, "subject to the approval of the board, may appoint such deputy or deputies, assistant or assistants, keeper or keepers, as may be required in the taking care of the prison." Further language of Section 2 provides, however, that "[t]he number and *compensation* of such deputies, assistants, or keepers *shall be fixed by the salary board.*" (Emphasis added.)

Section 1622 of The County Code, 16 P.S. §1622, creates in each county a salary board, composed of the three county commissioners and either the county controller or the county treasurer.[5] Section 1620 of

---

[3] Act of August 9, 1955, P.L. 323, *as amended.*

[4] Franklin County is a fifth class county.

[5] Section 1625(a) of The County Code, 16 P.S. §1625(a), provides that whenever a salary board considers the number or salaries

The County Code, 16 P.S. §1620, provides, in part, that "[t]he salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes. . . ." Given the fact that the authority to fix compensation for county prison guards is vested not in the prison board but in the salary board, we agree with the Prison Board's initial contention that, absent action by the Salary Board fixing salaries at a higher level, it is powerless to implement the arbitrators' award. The question remains, however, as to whether any action required of the Salary Board or of the County Commissioners in approving the arbitrators' award constitutes a "legislative enactment" within the meaning of Section 805 of Act 195.

We begin with the principle that a county, as a political subdivision of the Commonwealth, may legislate, but not, however, beyond the bounds of the powers granted to it by the General Assembly in The County Code. *Chester County v. Philadelphia Electric Co.*, 420 Pa. 422, 218 A.2d 331 (1966). One of the expressly enumerated general powers of a county is the capacity as a body corporate to "make appropriations for any purpose authorized" by The County Code or other act of the General Assembly. Section 202(6) of The County Code, 16 P.S. §202(6). Certainly an authorized purpose for appropriation by a county is the compensation to be paid county employees. We believe that when a county appropriates money for the payment of salaries and wages of its employees, it is performing a legislative function. Indeed, it is difficult to imagine a governmental action

of employees of a particular county office or agency, the officer or executive head of such agency shall sit as a member of the board "as long as any matter affecting his office or agency is under consideration and no longer."

more essentially legislative than the appropriation of public funds. In *Coleman v. Stevenson*, 20 Pa. Commonwealth Ct. 498, 503, 343 A.2d 375, 378 (1975), we noted, in dictum, that "a local government may not be forced to make payment of salaries . . . if the legislative body of that government unit does not make appropriations sufficient to cover the claim."[6] The arbitrators' award in this case, addressing county employees' salaries, required legislative enactment to be effective. Was such legislative enactment forthcoming?

Section 203 of The County Code, 16 P.S. §203, vests the corporate power of each county in the board of county commissioners. Thus, the legislative authority to make appropriations for employees' salaries rests with the board of county commissioners, even though the duty to "fix" employees' salaries is conferred upon the county salary board. We need not specifically decide whether salary board approval of an arbitration award in terms of the *fixing* of higher salaries constitutes "legislative enactment" within the meaning of Section 805 of Act 195 because we are convinced that the action which does clearly constitute a legislative enactment—*i.e.*, appropriation of funds by the county commissioners—never occurred in the instant case.

Although the record is silent as to what action, if any, the Franklin County Commissioners *qua* board of commissioners took with respect to appropriating county funds necessary for implementation of this arbitrators' award, we do know that the Salary Board,

---

[6] Exceptions to this general principle of law do, of course, exist. Article III, Section 31, of the Pennsylvania Constitution and the Act of June 24, 1968 (Act 111), P.L. 237, 43 P.S. §217.1 et seq., impose a mandate upon public employers to implement arbitration awards involving policemen and firemen. *See, e.g., Tate v. Antosh*, 3 Pa. Commonwealth Ct. 144, 281 A.2d 192 (1971). *See also Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969).

on April 9, 1976, unanimously rejected the award. Sitting as members of the Salary Board, the individual county commissioners each voted to reject the award. Since approval by the Salary Board of a salary increase for county prison guards is a necessary step in the process culminating in legislative enactment in the form of appropriation of county funds, we agree with appellant that, in the absence of such legislative enactment, the arbitrators' award was never "effective"; rather, unless and until the required legislative enactment was forthcoming, the award was "advisory only."

It follows, therefore, that appellant could not have committed an unfair labor practice by refusing to implement an arbitration award which was advisory only. Accordingly, the order of the lower court is reversed.

ORDER

Now, August 31, 1979, the order of the lower court is hereby reversed.